KRISTIAN BECKETT (ISB #8731)
FRANK SCHREIBER (ISB# 10197)
BECKETT LAW FIRM
8752 W. OVERLAND RD. STE 110
BOISE, IDAHO 83709
Phone: (208) 899-9095
Fax: (425) 222-2215
kristian@beckettlegal.com
frank@beckettlegal.com
*Attorneys & Co-Counsel for Petitioner*

LYNDON P. NGUYEN (ISB #8467)
NGUYEN LAW, PLLC
455 E Danika Ln
Garden City, Idaho 83714
Phone: (208) 914-5137
*lyndonlegal@gmail.com*
*Attorney & Co-Counsel for Petitioner*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
Boise Idaho Division

| | |
|---|---|
| A.H., a minor child (the "Student) by and through their parent and legal guardian, D.H. <br><br> Plaintiffs, <br><br> vs. <br><br> KUNA SCHOOL DISTRICT NO. 3; POCATELLO-CHUBBUCK SCHOOL DISTRICT NO. 25; IDAHO DEPARTMENT OF HEALTH AND WELFARE, IDAHO STATE DEPARTMENT OF EDUCATION; IDAHO STATE BOARD OF EDUCATION; and DOES I-V <br><br> Defendant. | Case No.: <br><br> CIVIL ACTION PURSUANT TO 20 U.S.C. §1415(i)(2)(A) AND 34 CFR §300.516(a) - INDIVIDUALS WITH DISABILITIES IN EDUCATION ACT |

Plaintiffs, A.H. a minor, by and through his parent D.H., parent of a child with a disability, by and through his attorneys of record, Kristian Beckett of the Beckett Law Firm and Lyndon Nguyen of Nguyen Law PLLC, and do hereby request relief from this court, through this civil action, in accordance with the laws of the United States, as set forth under 20 U.S.C. § 1415(i)(2)(A).

## **INTRODUCTION**

1.    This is a civil action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., seeking judicial review of final administrative decisions, and associated prehearing orders which were adverse to the Plaintiff, that collectively adjudicated and constrained Plaintiffs' Individuals with Disabilities Education Act claims concerning A.H., a child with disabilities.

2.    Plaintiffs seek review of the March 23, 2026 Memorandum Decision in SDE No. H-25-05-23A(1) (Hunden v. Kuna School District No. 3) (the "KUNA SCHOOL DISTRICT NO. 3 Decision").

3.    Plaintiffs seek review of the March 23, 2026 Memorandum Decision in SDE No. H-25-05-23A(2) (Hunden v. Pocatello-Chubbuck School District No. 25) (the "POCATELLO-CHUBBUCK SCHOOL DISTRICT NO. 25 Decision").

4.    Plaintiffs also seek review of all other adverse decisions and orders including the June 27, 2025 Order on Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request which dismissed the Amended Complaint as to the Idaho State Department of Education and the Idaho State Board of Education in SDE No. H-25-05-23A.

5.      Plaintiffs are "aggrieved" parties within the meaning of 20 U.S.C. § 1415(i)(2)(A) because the Kuna School District No. 3 Decision and Pocatello-Chubbuck School District No. 25 Decision denied Plaintiffs' due process claims and awarded no remedy, and because the Sufficiency Dismissal Order removed the SEA defendants and prevented adjudication of state-level responsibility in circumstances where the LEA and hospital both disclaimed educational responsibility, leaving A.H. without education for extended periods.

6.      Plaintiffs request relief under 20 U.S.C. § 1415(i)(2)(C), including reversal or vacatur of erroneous findings and conclusions, remand for further administrative proceedings where appropriate, compensatory education, declaratory relief, and prospective injunctive relief necessary to ensure A.H. receives a free and appropriate public education in the least restrictive environment.

7.      This complaint is intended to be pleaded as a single integrated civil action that addresses (1) the LEA obligations of Kuna School District No. 3 and Pocatello-Chubbuck School District No. 25 during the periods A.H. was enrolled or served by those LEAs, and (2) the obligations of the Idaho SEA entities (Idaho State Department of Education and Idaho State Board of Education) to ensure that IDEA requirements are carried out in Idaho and that children in complex custody, hospitalization, and placement transitions do not lose access to education.

### JURISDICTIONAL STATEMENT

8.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Plaintiff's claims arises under 20 U.S.C. § 1415(i)(3)(A) of the Individuals with Disabilities Education Act (IDEA).

10.      The IDEA provides concurrent jurisdiction pursuant to 20 U.S.C. 1415 (i)(2)(A) and 20 U.S.C. 1415(3)(A), 1415(l); 34 CFR § 300.516(a).

11.      Plaintiff is seeking review of an agency order which was entered on March 23, 2026 pursuant to Idaho State Department of Education administrative law case No. H-25-05-23a. A true and correct copy of the Decision, appealed here, is attached to this complaint as Exhibit "A" and Exhibit "B" and is otherwise incorporated herein by reference.

12.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Defendant Kuna School District No. 3 resides in Ada County, Idaho.

13.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant Idaho Department of Health and Welfare resides in Boise, Ada County, State of Idaho.

14.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant Idaho State Department of Education, resides in Boise, Ada County, State of Idaho.

15.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant Idaho State Board of Education, resides in Boise, Ada County, State of Idaho.

16.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to this action occurred in Ada, County, State of Idaho.

17.      The events giving rise to the claims and allegations against Pocatello-

Chubbuck School District No. 25 occurred in Bannock County.

18.    This court has supplemental jurisdiction over Pocatello-Chubbuck School District No. 25.

## IDENTIFICATION OF PARTIES

19.    D.H. is the parent of A.H.

20.    D.H. is a resident of Ada, County, State of Idaho.

21.    D.H. is entitled to the protections and procedures under the IDEA and as a parent or guardian advocating on A.H.'s behalf.

22.    A.H. is an individual with multiple disabilities as defined under 20 U.S.C. § 1401(3).

23.    A.H. has a diagnosis of Autism Spectrum Disorder (ASD).

24.    A.H.'s disabilities substantially limit his major life activities including, but not limited to, the following:

        a.    learning,

        b.    thinking,

        c.    concentrating,

        d.    communicating,

        e.    reading and writing,

        f.    caring for himself, and

        g.    working.

25.    A.H. was determined to be eligible for special education under the disability category of Intellectual Disability in his kindergarten year.

26.     A.H. has been on an Individualized Education Program (IEP) from kindergarten through the present time.

27.     A.H. is currently a resident of South West Idaho Treatment Center (SWITC) which is located in Nampa, Canyon County, Idaho, which is a facility owned and operated by the Idaho Department of Health and Welfare.

28.     A.H. is in the physical custody, care, and control of the Idaho Department of Health and Welfare.

29.     The State of Idaho Constitution guarantees the right to a public free education in common schools. Idaho Const. Art. IX.

30.     The Idaho State Board of Education, is a governmental agency established by the Idaho Constitution to supervise educational institutions and public school systems within the State of Idaho.

31.     The Idaho State Board of Education is charged with the general supervision, governance and control of all state educational institutions. Idaho Code § 33-101, Idaho Code § 33-107.

32.     The Idaho State Board of Education is designated as the state educational agency, which is authorized to negotiate, and contract with, the federal government, and to accept financial or other assistance from the federal government or any agency thereof, under such terms and conditions as may be prescribed by congressional enactment designed to further the cause of education. Idaho Code § 33-110.

33.     The Idaho State Board of Education receives federal funding for the provision of education within the State of Idaho.

34.     The Idaho State Board of Education was established by the State of Idaho in 1890.

35.     Idaho State Board of Education is ultimately responsible for ensuring that students with disabilities are provided a free and appropriate education in accordance with its contract with the Federal Department of Education and the United States Government.

36.     The Idaho State Department of Education, is an executive agency of the State Board of Education.

37.     The Idaho State Department of Education, is responsible for carrying out policies, procedures, and duties authorized by law or established by the State Board of Education for all elementary and secondary school matters. Idaho Code § 33-125.

38.     The Idaho State Department of Education is responsible for ensuring that Idaho schools meet the Individuals with Disabilities Education Act (IDEA) requirements.

39.     The Idaho State Department of Education ensures that Idaho schools meet the requirements of the IDEA by providing guidance, resources, and monitoring to Local Education Agencies (LEAs).

40.     All school districts within the State of Idaho are LEAs.

41.     Defendant Kuna School District No. 3, is under the direct supervision and control of the State Board of Education. *See* Idaho Code § 33-116.

42.     Kuna School District No. 3, is a body corporate and politic, and is a duly constituted school district or LEA of the State of Idaho, pursuant to Idaho Code § 33-301 *et. seq.*,

43.     Kuna School District No. 3, is located in Ada County, Idaho with its principal offices located at 711 E. Porter St. Kuna, Idaho 83634.

44.     Kuna School District No. 3, receives federal financial assistance by way of the State Department of Education.

45.     Kuna School District No. 3, is responsible for complying with state laws relating to providing students within its geographical boundaries with a free public education.

46.     Kuna School District No. 3, is responsible for complying with federal and state laws relating to the implementation of rules to ensure that all students within its geographical boundary are provided a free and appropriate public education.

47.     Kuna School District No. 3, is responsible for complying with federal laws relating to providing students with disabilities a free and appropriate public education, as defined by the Individuals with Disabilities in Education Act.

48.     Kuna School District No. 3, is responsible for providing students with disabilities, as defined by the Individuals with Disabilities in Education Act, a free and appropriate public education in the least restrictive environment.

49.     Defendant Pocatello-Chubbuck School District No. 25, is under the direct supervision and control of the State Board of Education. *See* Idaho Code § 33-116.

50.     Defendant Pocatello-Chubbuck School District No. 25, is a body corporate and politic, and is a duly constituted school district or LEA of the State of Idaho, pursuant to Idaho Code § 33-301 *et. seq.*,

51.     Defendant Pocatello-Chubbuck School District No. 25, is located in Bannock County, Idaho with its principal offices located at 3115 Pole Line Rd., Pocatello, Idaho 83201.

52.     Defendant Pocatello-Chubbuck School District No. 25, receives federal financial assistance by way of the State Department of Education.

53.     Defendant Pocatello-Chubbuck School District No. 25, is responsible for complying with state laws relating to providing students within its geographical boundaries with a free public education.

54.     Defendant Pocatello-Chubbuck School District No. 25, is responsible for complying with federal and state laws relating to the implementation of rules to ensure that all students within its geographical boundary are provided a free and appropriate public education.

55.     Defendant Pocatello-Chubbuck School District No. 25, is responsible for complying with federal laws relating to providing students with disabilities a free and appropriate public education, as defined by the Individuals with Disabilities in Education Act.

56.     Defendant Pocatello-Chubbuck School District No. 25, is responsible for providing students with disabilities, as defined by the Individuals with Disabilities in

Education Act, a free and appropriate public education in the least restrictive environment.

57. The Idaho Department of Health and Welfare is a governmental agency established by the Idaho Constitution, section 20, article IV, for the administration of public health to the residents of Idaho.

58. The Idaho Department of Health and Welfare acts in loco parentis for children in physical custody of the Department.

59. The Idaho Department of Health and Welfare is responsible for ensuring that students in their custody and care are enrolled in school and receive an appropriate education. Idaho Code §33-202

60. The Idaho Department of Health and Welfare is responsible for ensuring that a student with disabilities under their custody and care receives a free and appropriate public education under the IDEA, whether through providing direct education or coordinating with other entities such as the Idaho State Department of Education or the local education agency in which its facilities are located.

61. The Idaho Department of Health and Welfare is not an LEA or SEA as defined by the IDEA.

62. The Idaho Department of Health and Welfare is a non-educational public agency as defined under 34 C.F.R. 300.154(b).

## ADMINISTRATIVE PROCEEDINGS, EXHAUSTION, AND FINALITY

63.    Plaintiffs have pursued administrative remedies through Idaho IDEA due process procedures, resulting in multiple hearing decisions and orders that are the subject of review by this court including the following pending actions:

a.  SDE No. H-25-02-24a resulted in a decision and order which was appealed to this court with the following case number: 1:25-cv-00489-BLW; A.H., a minor child (the "Student) by and through their parent and legal guardian, D.H. v. NAMPA SCHOOL DISTRICT NO. 131; IDAHO DEPARTMENT OF HEALTH AND WELFARE, and IDAHO STATE DEPARTMENT OF EDUCATION, and DOES I-V

b.  SDE No. H-25-05-23a is the present action which resulted in a final decision and order on March 23, 2026 following a two-day due process hearing concerning Kuna School District No. 3 occurred February 5 to 6, 2026, and a one-day due process hearing concerning Pocatello-Chubbuck School District No. 25 occurred February 9, 2026.

c.  SDE No. H-25-08-26a resulted in a decision and order which was appealed to this court with the following case number: 1:26-cv-00059-BLW; A.H. a minor child (the "Student) by and through their parent and legal guardian, D.H. v. IDAHO STATE BOARD OF EDUCATION ("SBOE"); IDAHO STATE DEPARTMENT OF EDUCATION ("IDE"); and NAMPA SCHOOL DISTRICT NO. 131 ("DISTRICT").

**FACTUAL ALLEGATIONS**

64.    A.H. is a minor child with disabilities and is eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA).

65.    A.H. meets Idaho eligibility criteria for special education services under Autism Spectrum Disorder and Language Impairment.

66.    A.H. is also diagnosed with Type I diabetes.

67.    A.H. is diagnosed with Autism, Tourette syndrome, and ADHD in addition to Type I diabetes.

68.    A.H. is a child with a disability protected under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

69.    A.H. has a history of aggressive maladaptive behaviors requiring adult supervision throughout the school day.

70.    A.H.'s disability-related behaviors include physical aggression, self-injurious behavior, and elopement.

71.    A.H.'s behavior is related, at least in part, to an inability to communicate wants and needs and to regulate behavior in overwhelming settings.

72.    During A.H.'s seventh grade year, A.H. transferred to Fremont Middle School in the Kuna School District on September 20, 2021.

73.    Prior to attending Fremont Middle School, A.H. attended Basin Elementary School in Idaho City, Idaho.

74.    A.H. attended Fremont Middle School for eighth grade during the 2022-2023 school year.

75.     During the 2021-2022 and 2022-2023 school years, A.H. was on an Individualized Education Program (IEP) while in Kuna School District No. 3.

76.     Kuna School District No. 3 determined that A.H.'s least restrictive environment included full-time schooling with time in general education supported by 1:1 assistance.

77.     The parents' stated LRE description for Fremont Middle School was approximately 20 percent time in general education with 1:1 support.

78.     At the beginning of A.H.'s middle school time in Kuna, A.H. experienced daily behavior incidents including hitting.

79.     By the end of A.H.'s two years at middle school in Kuna, A.H.'s behavioral incidents tapered to weekly.

80.     Petitioner participated in some of A.H.'s IEP team meetings during the 2022-2023 school year.

81.     On November 15, 2022, an IEP team meeting occurred in Kuna, and Petitioner attended and participated.

82.     The services, accommodations, modifications, and goals in the November 15, 2022 IEP were agreed to by the IEP team.

83.     The November 15, 2022 IEP included a Behavior Intervention Plan (BIP).

84.     A.H. was admitted to St. Luke's Hospital on March 16, 2023, and discharged on May 27, 2023.

85.    Petitioner testified that during the hospitalization in the fourth quarter of eighth grade, to the best of his knowledge there was not a lot, if anything, done educationally, and nobody from the School District came to the hospital to do anything.

86.    A.H. was readmitted to St. Luke's Hospital on May 28, 2023.

87.    After readmission on May 28, 2023, A.H. remained at St. Luke's Hospital until sometime in August 2023.

88.    Plaintiffs allege that while A.H. was admitted to St. Luke's Hospital, A.H. was not provided education by Kuna School District No. 3.

89.    Plaintiffs allege that while A.H. was admitted to St. Luke's Hospital, A.H. was not provided education by the Idaho Department of Health and Welfare.

90.    Plaintiffs allege that while A.H. was admitted to St. Luke's Hospital, A.H. was not provided education by the Idaho State Department of Education.

91.    Plaintiffs allege that while A.H. was admitted to St. Luke's Hospital, A.H. was not provided education by the Idaho State Board of Education.

92.    A.H.'s November 15, 2022 IEP states, "It has been determined that [Student] is not eligible for extended school year services."

93.    The hearing officer concluded that because A.H. was not eligible for ESY services, Petitioner failed to show A.H. was entitled to special education services during the summer of 2023.

94.    Sometime in August 2023, A.H. moved from St. Luke's Hospital to Aurora Behavioral Health System in Arizona.

95.     Plaintiffs allege that while A.H. was admitted for residential treatment in Arizona, A.H. was not provided education by Kuna School District No. 3.

96.     A.H. was discharged from Aurora in October 2023 to return to his parents' home in Idaho.

97.     Plaintiffs allege that DHW was warned that without appropriate supports A.H. would regress and require additional treatment and care after return from Arizona.

98.     Kuna School District No. 3 did not become aware that A.H. would enroll at Kuna High School until early October 2023.

99.     Prior to being contacted about A.H.'s enrollment at Kuna High School in early October 2023, Kuna School District No. 3 had not been informed and was unaware that A.H. was residing out of state in a treatment center.

100.    In October 2023, prior to A.H.'s attendance at Kuna High School, Kuna School District No. 3 held transition meetings with staff, Aurora, and parents.

101.    Kuna School District No. 3 requested information about A.H.'s behaviors and interventions used by Aurora for the purpose of acclimating A.H. and staff to his return.

102.    Kuna School District No. 3 sent "Request for Information" forms to A.H.'s parents to obtain consent for release of records from Aurora.

103.    Kuna School District No. 3 ultimately received no behavioral records from Aurora.

104.    Information from A.H.'s attendance at Fremont Middle School was shared with Kuna High School.

105.    Kuna School District No. 3 reassigned staff from Fremont Middle School who previously worked with A.H. to assist with A.H.'s transition to Kuna High School.

106.    Kuna School District No. 3 assigned a behavioral interventionist to support A.H. and to be present when A.H. arrived on his first day of school at Kuna High School.

107.    Transition meetings in October 2023 included A.H.'s mother, and the hearing officer found she provided input and was listened to during those meetings.

108.    At transition meetings, Kuna School District No. 3 discussed with A.H.'s mother that the November 15, 2022 IEP would be used for A.H. at Kuna High School.

109.    The hearing officer found that A.H.'s mother did not object to or disagree with use of the November 15, 2022 IEP.

110.    The hearing officer found that prior to A.H.'s attending Kuna High School on October 23, 2023, Petitioner did not participate in meetings or discussions about enrolling A.H. in the Kuna School District.

111.    A.H. enrolled at and began attending Kuna High School on October 23, 2023.

112.    A.H.'s November 15, 2022 IEP had not expired at the time of enrollment at Kuna High School.

113.    Kuna High School adopted the November 15, 2022 IEP, including the BIP included in that IEP.

114.    A.H. attended Kuna High School for six days from October 23, 2023 through October 30, 2023.

115. On day 1, A.H. arrived at approximately 7:30 a.m. and was met by the behavioral interventionist.

116. On day 1, A.H. eloped multiple times throughout the day inside and outside the building.

117. The hearing officer found that in response to day 1 behaviors, Kuna School District No. 3 staff provided and offered interventions called for in the BIP.

118. On day 2, A.H. arrived early and eloped before school formally began.

119. On day 2, A.H. attempted to elope toward a high traffic street in front of the high school.

120. On day 2, staff intervened to prevent A.H. from reaching the street by keeping A.H. in the school vestibule until A.H. could de-escalate.

121. On day 2, A.H. repeatedly hit his head into the vestibule window.

122. The hearing officer found that on day 2, Kuna School District No. 3 staff responded as required by A.H.'s BIP by positioning appropriately, providing verbal cues, and maintaining safe distancing.

123. On day 2, A.H. was restrained due to punching another person in the head.

124. On day 2, A.H. went home early with his mother.

125. On day 3, A.H. eloped multiple times during the day and struck a teacher.

126. On day 3, A.H. was in class for approximately 18 percent of the day.

127. The hearing officer found that in response to day 3 behaviors, Kuna School District No. 3 staff provided interventions called for by the BIP.

128. On day 4, recorded data reflected five behavioral incidents including a 45 to 60 minute elopement.

129. On day 4, Kuna School District No. 3 convened a meeting including representatives from the Idaho Department of Health and Welfare.

130. On day 4, a licensed behavior analyst employed by the Idaho Department of Health and Welfare agreed to come to school the following week to conduct direct observation and provide additional behavior consultation.

131. On day 4, Kuna School District No. 3 assigned a new paraprofessional to A.H. to supplement existing support personnel.

132. The hearing officer found that there was no evidence presented at hearing as to events at school during days 5 and 6.

133. On the night of October 30, 2023, due to a violent episode at home, police were called and A.H. was taken to St. Luke's Hospital.

134. The hearing officer found that during A.H.'s time at Kuna High School, a consent for an FBA was sent to the parent.

135. The hearing officer found that the consent form was not returned and a second consent was sent, and the second consent form was not returned.

136. Plaintiffs allege Kuna High School did not conduct an FBA for A.H. prior to the six-day attendance period.

137. Plaintiffs allege Kuna High School did not have an appropriate BIP or IEP for A.H. for the high school setting in October 2023.

138.    Plaintiffs allege Kuna High School did not have properly trained staff to provide services to A.H. during the six-day period.

139.    Plaintiffs allege Kuna High School did not provide A.H. an education during the six-day period.

140.    On November 9, 2023, an IEP team meeting was held for annual review of A.H.'s IEP.

141.    The hearing officer found that at the time of the November 9, 2023 IEP meeting, the IEP team knew A.H.'s mother was withdrawing A.H. from Kuna School District No. 3.

142.    The hearing officer found the IEP team updated the IEP so it would not expire and agreed on keeping the same goals and BIP from the prior IEP.

143.    The hearing officer found that on the same day as the IEP team meeting, A.H.'s mother withdrew and unenrolled A.H. from Kuna High School.

144.    The hearing officer found that Kuna School District No. 3 unenrolled A.H. the next day, November 10, 2023, at the request of A.H.'s mother.

145.    The hearing officer found that Kuna School District No. 3 issued written notice on November 9, 2023 stating that the student withdrew and the last day of attendance was October 30, 2023.

146.    The Kuna School District No. 3 decision states that claims arising from events occurring prior to June 16, 2023 are barred by the IDEA's two-year limitation of actions.

147.    The Kuna School District No. 3 decision applied the discovery rule and stated the limitation begins when the parent knew or should have known about the alleged action forming the basis of the complaint.

148.    The Kuna School District No. 3 decision concluded that Petitioner's claim regarding failure to provide educational services during hospitalization in the 2022-2023 school year was barred by the two-year limitation.

149.    The Kuna School District No. 3 decision concluded that A.H.'s IEP did not provide ESY services and that Petitioner failed to show A.H. was entitled to special education services during summer 2023.

150.    The Kuna School District No. 3 decision concluded Kuna School District No. 3 was not obligated to provide special education services while A.H. resided at Aurora in Arizona.

151.    The Kuna School District No. 3 decision concluded that A.H.'s November 15, 2022 IEP was reasonably calculated to enable progress in light of A.H.'s circumstances.

152.    The Kuna School District No. 3 decision concluded that Kuna School District No. 3 appropriately implemented the IEP and began the process to amend the IEP during the six-day high school period.

153.    The Kuna School District No. 3 decision concluded that the failure to provide signed consent impeded Kuna School District No. 3's efforts to assess and evaluate A.H., develop a BIP, and amend the IEP.

154.    The Kuna School District No. 3 decision concluded that Kuna School District No. 3's obligation to provide FAPE ended when A.H.'s mother withdrew A.H. from Kuna High School.

155.    A.H. moved into the Pocatello-Chubbuck School District No. 25 service area in December 2023.

156.    A.H. started school at Highland High School in Pocatello-Chubbuck School District No. 25 the first week of January 2024.

157.    Pocatello-Chubbuck School District No. 25 received A.H.'s IEP from Kuna High School.

158.    Pocatello-Chubbuck School District No. 25 conducted a sufficiency review of the Kuna IEP and determined the IEP was insufficient.

159.    Pocatello-Chubbuck School District No. 25 determined A.H.'s eligibility was sufficient and A.H.'s BIP was sufficient.

160.    Pocatello-Chubbuck School District No. 25 amended A.H.'s IEP on January 17, 2024 to adjust the IEP to be consistent with services available at Pocatello-Chubbuck School District No. 25.

161.    Pocatello-Chubbuck School District No. 25 provided written notice of the January 17, 2024 IEP amendment.

162.    The written notice provided that parent and district agreed that the annual IEP could be amended without convening an IEP team meeting and that the amendments would be incorporated into the IEP dated 11/9/2023.

163.   Pocatello-Chubbuck School District No. 25 adopted the BIP from the Kuna IEP as of January 17, 2024.

164.   Pocatello-Chubbuck School District No. 25 obtained consent to conduct a functional behavior assessment for A.H.

165.   Pocatello-Chubbuck School District No. 25 conducted a functional behavior assessment but kept the existing BIP, including the skills necessary based on the FBA.

166.   Pocatello-Chubbuck School District No. 25 amended the IEP to provide more service minutes than called for under the Kuna IEP, including increasing behavior intervention time.

167.   Pocatello-Chubbuck School District No. 25 increased math and reading minutes from 300 minutes per week to 360 minutes per week.

168.   A.H.'s mother was a member of the Pocatello-Chubbuck School District No. 25 evaluation team for eligibility and signed an eligibility report dated February 2, 2024 indicating agreement.

169.   A.H. generally stayed at school for the entire school day while enrolled at Pocatello-Chubbuck School District No. 25.

170.   A.H. received the full number of service minutes reflected in the amended IEP for math, behavior, reading, and communication, according to the Pocatello-Chubbuck School District No. 25 decision.

171.    Pocatello-Chubbuck School District No. 25 removed functional life skills from the IEP because Pocatello-Chubbuck School District No. 25 worked on many functional life skills during classroom instruction time.

172.    At Pocatello-Chubbuck School District No. 25, A.H. interacted with nondisabled peers in adaptive physical education.

173.    At Pocatello-Chubbuck School District No. 25, nondisabled peers provided tutoring in the extended resource room setting in which A.H. participated.

174.    The Pocatello-Chubbuck School District No. 25 decision states the hearing officer found it difficult to determine what Petitioner was alleging against Pocatello-Chubbuck School District No. 25 because the amended complaint contained general allegations without clarifying facts.

175.    The Pocatello-Chubbuck School District No. 25 decision states Petitioner's post-hearing brief did not clarify the claims and instead argued an alleged contradiction between testimony from a prior due process hearing and evidence presented in this case.

176.    The Pocatello-Chubbuck School District No. 25 decision concluded that undisputed evidence refuted each general allegation against Pocatello-Chubbuck School District No. 25.

177.    The Pocatello-Chubbuck School District No. 25 decision found that Pocatello-Chubbuck School District No. 25 did not fail to hold an appropriate IEP meeting and that parent agreed to amend without convening a meeting.

178.    The Pocatello-Chubbuck School District No. 25 decision found Pocatello-Chubbuck School District No. 25 included the parent in decision-making, provided written notice, and obtained parent consent for services and assessment.

179.    The Pocatello-Chubbuck School District No. 25 decision found Pocatello-Chubbuck School District No. 25 developed an appropriate IEP and conducted an FBA, confirming the BIP was appropriate.

180.    The Pocatello-Chubbuck School District No. 25 decision found Pocatello-Chubbuck School District No. 25 implemented the IEP and provided FAPE.

181.    The Pocatello-Chubbuck School District No. 25 decision addressed Petitioner's argument about Ms. Quanrud's testimony from a prior hearing, finding Ms. Quanrud had no personal knowledge of A.H.'s Pocatello-Chubbuck School District No. 25 experience and that Pocatello-Chubbuck School District No. 25 staff testimony was first-hand and credible.

182.    The Pocatello-Chubbuck School District No. 25 decision stated there was no testimony in the case that A.H. spent a full day in general education and that A.H. was in the extended resource room and disabled learning classroom, with IEP time with nondisabled peers reflected as 32.3 percent.

183.    The March 23, 2026 Kuna School District No. 3 and Pocatello-Chubbuck School District No. 25 decisions each state that any aggrieved party has the right to bring a civil action and that the time limitation is 90 days from the date of decision, or the time allowed by state law if different.

## CLAIM NO. 1 - CIVIL ACTION SDE NO. H-25-05-23A

184.    D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim.

185.    D.H. requests this court review all decisions and orders entered in H-25-05-23a.

186.    D.H. asserts that the Decision rendered in H-25-05-23a was not based upon a careful and impartial consideration of all the evidence.

187.    D.H. asserts that the Decision rendered in H-25-05-23a  failed to consider all of the evidence presented.

188.    D.H. asserts that the Decision rendered in H-25-05-23a is the result of erroneous conclusions of law.

189.    D.H asserts that the Decision rendered in H-25-05-23a fails to consider or appropriately apply relevant precedent to the facts considered.

190.    D.H. asserts that the Decision rendered in H-25-05-23a failed to consider that a general education setting is the primary educational placement for all children who do not have an IEP.

191.    D.H. asserts that the Decision rendered in H-25-05-23a failed to consider that the IDEA has a mandate to mainstream children with disabilities.

192.    D.H. asserts that the Decision rendered in H-25-05-23a failed to consider that the IDEA requires "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs

only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

## CLAIM NO. 2 - CIVIL ACTION SDE NO. H-25-05-23A

193.   D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

194.   Plaintiffs are aggrieved by the Memorandum Decision and Order dated March 23, 2026 in SDE No. H-25-05-23A(1), issued by Hearing Officer Judson W. Tolman, in the matter captioned D.H. as legal guardian and parent of A.H. v. Kuna School District No. 3.

195.   This Claim is brought pursuant to 20 U.S.C. § 1415(i)(2)(A) and 34 C.F.R. § 300.516(a), seeking judicial review of the final agency decision, and pursuant to 20 U.S.C. § 1415(i)(2)(C) seeking appropriate relief based on the preponderance of the evidence.

196.   The KSD Decision denied all claims asserted against KSD, including claims that KSD failed to follow and implement A.H.'s IEP, failed to develop an appropriate IEP including failure to conduct an FBA and develop an appropriate BIP, and failed to provide A.H. FAPE in the LRE.

197.   Plaintiffs contend the KSD Decision contains errors of law and errors of application of law to fact, and includes findings and conclusions not supported by a preponderance of the evidence in the administrative record.

198.    Plaintiffs contend the KSD Decision erroneously held that "claims arising from events occurring prior to June 16, 2023, are barred by the IDEA's two-year limitation of actions," including the claim that KSD failed to provide educational services during A.H.'s hospitalization in the 2022-2023 school year.

199.    Plaintiffs contend the KSD Decision erroneously denied relief for the period of A.H.'s "extended hospital confinement" in the summer of 2023 based on an ESY determination in the IEP, concluding that because the IEP stated A.H. was not eligible for extended school year services, A.H. was not entitled to special education services during the summer of 2023.

200.    Plaintiffs contend the KSD Decision erroneously concluded that KSD was not obligated to provide FAPE while A.H. resided at Aurora Behavioral Health System in Arizona, including by treating the out-of-state placement as a categorical bar to KSD's obligations in these circumstances.

201.    Plaintiffs further contend the KSD Decision erroneously concluded that A.H.'s November 15, 2022 IEP was reasonably calculated to enable A.H. to make progress in light of A.H.'s circumstances, and that KSD appropriately implemented the IEP and BIP during A.H.'s enrollment at Kuna High School in October 2023, notwithstanding findings including repeated elopement, attempted elopement toward a high traffic street, A.H. repeatedly striking his head on a vestibule window, restraint, striking staff, and A.H. being in class only approximately 18 percent of the day on at least one day.

202.    Plaintiffs contend the KSD Decision improperly relied on the asserted absence of returned consent for a functional behavior assessment as a dispositive basis to deny relief, and improperly treated that circumstance as excusing KSD's obligation to provide a program reasonably calculated to enable progress and to revise supports as required when behavior impeded learning and safety.

203.    Plaintiffs contend the KSD Decision improperly concluded that KSD's obligation to provide FAPE ended when A.H.'s mother withdrew A.H. from Kuna High School, without addressing the denial of educational opportunity and without awarding compensatory education or other equitable relief for the period of denial.

204.    Plaintiffs request that this Court reverse, vacate, or set aside the KSD Decision, and grant appropriate relief under 20 U.S.C. § 1415(i)(2)(C), including but not limited to declaratory relief that KSD denied A.H. FAPE, compensatory education to remedy lost educational opportunity, and prospective corrective relief as necessary to ensure compliance with the IDEA.

## CLAIM NO. 3 - CIVIL ACTION SDE NO. H-25-05-23A

205.    D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

206.    Plaintiffs are aggrieved by the Memorandum Decision and Order dated March 23, 2026 in SDE No. H-25-05-23a, issued by Hearing Officer Judson W. Tolman, in the matter captioned D.H. as legal guardian and parent of A.H. v. Pocatello-Chubbuck School District No. 25.

207.    This Claim is brought pursuant to 20 U.S.C. § 1415(i)(2)(A) and 34 C.F.R. § 300.516(a), seeking judicial review of the final agency decision, and pursuant to 20 U.S.C. § 1415(i)(2)(C) seeking appropriate relief based on the preponderance of the evidence.

208.    The PCSD Decision denied all claims asserted against PCSD, including allegations that PCSD failed to hold an appropriate IEP meeting, failed to include parent in decision-making, failed to provide written notice, failed to obtain consent prior to implementing services, failed to develop an appropriate transfer IEP in the LRE including conducting an FBA and developing an appropriate BIP, failed to implement the IEP, and failed to provide A.H. FAPE in the LRE.

209.    Plaintiffs contend the PCSD Decision contains errors of law and errors of application of law to fact, and includes findings and conclusions not supported by a preponderance of the evidence in the administrative record.

210.    Plaintiffs contend the hearing officer improperly disposed of Plaintiffs' claims by characterizing the Amended Complaint as containing "seven general allegations with no statement of facts or arguments that provide clarity," and by concluding that Plaintiffs' post-hearing brief "fails to clarify the claims," while nevertheless entering broad merits findings against Plaintiffs without fully addressing each alleged procedural violation under the correct legal standards.

211.    Plaintiffs contend the PCSD Decision improperly treated PCSD's reliance on an IEP amendment process, and the written notice language stating that parent and district agreed to amend the IEP without convening an IEP team meeting, as effectively

dispositive, without adequately analyzing whether the amendment process ensured meaningful parental participation, was appropriately informed, complied with applicable procedural safeguards, and was sufficient to address PCSD's own determination that the transfer IEP was "insufficient."

212.    Plaintiffs contend the PCSD Decision improperly treated certain disputed issues as "undisputed," including issues bearing on whether the IEP was implemented with fidelity, whether the written notice and consent processes were timely and sufficient, and whether the services delivered in practice were consistent with an IEP reasonably calculated to enable progress appropriate in light of A.H.'s circumstances.

213.    Plaintiffs further contend the PCSD Decision erred by failing to adequately analyze substantive FAPE and LRE requirements, including whether A.H.'s program and placement were reasonably calculated to enable progress and whether A.H. was educated with nondisabled peers to the maximum extent appropriate, particularly where the decision acknowledged A.H.'s time with nondisabled peers was accomplished primarily through adaptive P.E. and peer tutoring within the special education setting.

214.    Plaintiffs contend the PCSD Decision erred in its treatment of Plaintiffs' evidence and argument regarding credibility conflicts and prior testimony about A.H.'s functioning and educational access while enrolled in PCSD, and erred by using that discussion as a basis to reject Plaintiffs' claims without addressing whether, during the PCSD enrollment period, the district complied with IDEA procedural safeguards and provided A.H. FAPE in the LRE.

215.    Plaintiffs request that this Court reverse, vacate, or set aside the PCSD Decision, and grant appropriate relief under 20 U.S.C. § 1415(i)(2)(C), including but not limited to declaratory relief, compensatory education to the extent the record establishes denial of FAPE, and prospective corrective relief as necessary to ensure compliance with the IDEA.

## CLAIM NO. 4 - CIVIL ACTION DECLARATORY AND INJUNCTIVE RELIEF AGAINST IDAHO STATE DEPARTMENT OF EDUCATION

216.    D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

217.    Defendant Idaho State Department of Education ("ISDE" or "SDE") is the state educational agency responsible for ensuring that IDEA requirements are carried out in Idaho and for ensuring that local educational agencies comply with IDEA procedural safeguards and FAPE obligations.

218.    Plaintiffs are aggrieved by the June 27, 2025 Order on Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request in SDE No. H-25-05-23A (the "Sufficiency Dismissal Order"), which dismissed Plaintiffs' amended due process complaint as to ISDE (and also as to ISBE), and thereby removed ISDE from the administrative case.

219.    This Claim is brought pursuant to 20 U.S.C. § 1415(i)(2)(A) and 34 C.F.R. § 300.516(a), seeking judicial review of the Sufficiency Dismissal Order as agency action that materially affected the scope of the administrative proceeding and foreclosed adjudication of state-level responsibility and remedies.

220.   The Sufficiency Dismissal Order held, in substance, that Plaintiffs' allegations that the SEA failed to fulfill its supervisory functions by not providing direct education and services were not a "problem" within the scope of an IDEA due process hearing, and that the amended complaint did not pertain to, nor include facts pertaining to, a proposed initiation or change, or a refusal to initiate or change, by ISDE regarding the identification, evaluation, educational placement, or provision of FAPE to the student, as required by 34 C.F.R. §§ 300.503(a)(1)-(2), 300.507(a), and 300.508(b)(5).

221.   Plaintiffs contend the hearing officer's sufficiency ruling constitutes reversible legal error because it improperly construes the scope of IDEA due process and improperly bars, as a categorical matter, adjudication of the SEA's responsibility to ensure FAPE and IDEA compliance in circumstances where the alleged denial of FAPE arises from systemic failures and service gaps across agencies.

222.   Plaintiffs further contend the hearing officer erred in concluding that allegations regarding failure to perform SEA supervisory functions are not within due process scope, where the due process complaint in fact alleged denial of FAPE and failure to ensure the provision of educational services during periods in which the student was in state care, custody, and placement transitions, and where Plaintiffs alleged no LEA or non-educational agency provided education.

223.   ISDE's own sufficiency position, as reflected in the sufficiency filings, framed sufficiency as determined on the face of the complaint and argued that the amended complaint lacked specific factual allegations tying ISDE to a proposed or

refused initiation or change related to identification, evaluation, placement, or provision of FAPE.

224.   Plaintiffs contend that, given the nature of the allegations and the record, the complaint and the due process proceeding necessarily implicated whether ISDE, as the SEA, had obligations to act when A.H. was not receiving education during hospitalization and placement transitions and when responsibility was deflected among entities.

225.   Plaintiffs contend the Sufficiency Dismissal Order was prejudicial because it prevented the development of a complete administrative record regarding ISDE's knowledge, oversight responsibilities, and the adequacy of state-level policies, procedures, monitoring, and corrective action mechanisms to ensure that children like A.H. do not lose educational services during hospitalization or state custody transitions.

226.   Plaintiffs request that this Court reverse, vacate, or set aside the Sufficiency Dismissal Order as to ISDE, and grant appropriate relief under 20 U.S.C. § 1415(i)(2)(C), including (a) remand for further administrative proceedings including ISDE as a party, or (b) declaratory and injunctive relief in this civil action requiring ISDE to implement and enforce procedures sufficient to ensure that IDEA procedural safeguards and FAPE obligations are carried out for children in hospital confinement and state custody transitions, and (c) such other relief as the Court deems appropriate to remedy the denial of educational opportunity caused by the removal of ISDE from the due process proceeding.

## CLAIM NO. 5 - CIVIL ACTION DECLARATORY AND INJUNCTIVE RELIEF AGAINST STATE BOARD OF EDUCATION

216.    D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

227.    Defendant Idaho State Board of Education ("ISBE" or "SBOE") is named in Plaintiffs' due process case as part of the state educational agency structure alleged to be responsible for ensuring that IDEA requirements are carried out within the State of Idaho.

228.    Plaintiffs are aggrieved by the June 27, 2025 Order on Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request in SDE No. H-25-05-23A (the "Sufficiency Dismissal Order"), which dismissed Plaintiffs' amended due process complaint as to ISBE (and also as to ISDE), and thereby removed ISBE from the administrative case.

229.    This Claim is brought pursuant to 20 U.S.C. § 1415(i)(2)(A) and 34 C.F.R. § 300.516(a), seeking judicial review of the Sufficiency Dismissal Order as agency action that materially affected the scope of the administrative proceeding and foreclosed adjudication of state-level responsibility and remedies.

230.    The Sufficiency Dismissal Order held that Plaintiffs' amended complaint, which argued that SEA supervisory functions place primary responsibility for providing FAPE upon ISBE and ISDE and alleged that those agencies failed to fulfill those functions by not providing direct education and services, did not describe a "problem" within the scope of an IDEA due process hearing.

231.   The Sufficiency Dismissal Order further held that Plaintiffs' amended complaint did not pertain to, and did not include facts pertaining to, a proposed initiation or change, or a refusal to initiate or change, by ISBE regarding identification, evaluation, educational placement, or provision of FAPE to the student, as required by 34 C.F.R. §§ 300.503(a)(1)-(2), 300.507(a), and 300.508(b)(5).

232.   ISBE's June 25, 2025 sufficiency objection asserted that the amended complaint made no specific factual allegations against ISBE, that ISBE had not proposed or refused to initiate or change the student's identification, evaluation, placement, or provision of FAPE, and that general supervisory responsibilities were insufficient to establish liability in the due process posture.

233.   ISBE's objection further asserted that, as a general matter, a state educational agency provides direct special education and related services only when statutory conditions are met, including a state determination that a local educational agency is unable or unwilling to establish and maintain programs of FAPE, and asserted ISBE had made no such determination.

234.   Plaintiffs contend that the hearing officer's sufficiency ruling, as applied to ISBE, constitutes reversible legal error because it improperly construes the scope of IDEA due process and improperly bars adjudication of state-level responsibility where the alleged denial of FAPE arises from systemic failures and service gaps during hospitalization and state placement transitions.

235.   Plaintiffs further contend the Sufficiency Dismissal Order was prejudicial because it prevented the development of a complete administrative record regarding

ISBE's role in ensuring statewide compliance, including whether ISBE and its executive agency (ISDE) maintained adequate policies, procedures, monitoring, and corrective action mechanisms to prevent children with disabilities from losing access to education during hospital confinement and state custody transitions.

236. Plaintiffs request that this Court reverse, vacate, or set aside the Sufficiency Dismissal Order as to ISBE, and grant appropriate relief under 20 U.S.C. § 1415(i)(2)(C), including (a) remand for further administrative proceedings including ISBE as a party, or (b) declaratory and injunctive relief in this civil action requiring ISBE to ensure and enforce procedures sufficient to carry out IDEA requirements statewide for children in hospitalization and state custody transitions, and (c) such other relief as the Court deems appropriate to remedy the denial of educational opportunity resulting from dismissal of ISBE from the due process proceeding.

## CLAIM NO. 6 - CIVIL ACTION & DECLARATORY AND INJUNCTIVE RELIEF AGAINST STATE DEPARTMENT OF HEALTH AND WELFARE

237. D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

238. At all times relevant, A.H. was a child with a disability eligible under the IDEA and was entitled to receive special education and related services as part of a free appropriate public education.

239. Plaintiffs allege that after A.H. was removed from his home, A.H. became a ward of the State of Idaho Department of Health and Welfare ("DHW"), and DHW acted

in loco parentis for A.H. and made day-to-day decisions related to A.H.'s residential placement.

240.   Plaintiffs allege that DHW placed or caused A.H. to be placed in a series of restrictive environments and transitions, including extended hospitalization at St. Luke's Hospital, an out-of-state residential treatment placement in Arizona, and an intermediate care facility in Pocatello, Idaho (Hinge Point).

241.   The administrative record reflects that A.H. was admitted to St. Luke's Hospital on March 16, 2023, discharged May 27, 2023, readmitted May 28, 2023, and remained hospitalized until sometime in August 2023.

242.   Plaintiffs allege that during A.H.'s hospitalization at St. Luke's Hospital, A.H. was not provided any education by DHW.

243.   Plaintiffs allege that during A.H.'s out-of-state residential treatment placement in Arizona, A.H. was not provided education, and that DHW was warned that without appropriate supports A.H. would regress and require additional treatment and care upon return.

244.   Plaintiffs allege that DHW's placement decisions and transitions contributed to, or materially coincided with, periods in which no public agency ensured that A.H. received educational services, resulting in loss of educational opportunity and regression.

245.   Plaintiffs further allege that DHW's participation and role in A.H.'s placements and transitions was a material fact in the underlying administrative proceeding, including the meeting described in the KSD Decision on "Day 4" at Kuna

High School in October 2023 that included representatives from DHW and contemplated DHW behavior analyst consultation.

246.   Plaintiffs seek declaratory and injunctive relief requiring DHW to implement and follow interagency procedures, coordination, and placement-transition practices that ensure A.H., and similarly situated children in DHW custody or care, are enrolled and receiving special education and related services without gaps during hospitalization, out-of-state placements, and other state-directed residential transitions.

247.   Plaintiffs further seek, to the extent the Court determines DHW is a proper party for IDEA judicial review relief, an order granting appropriate equitable relief under 20 U.S.C. § 1415(i)(2)(C), including relief necessary to remedy educational deprivation attributable to periods of state-directed placement transitions during which A.H. did not receive educational services.

248.   Plaintiffs request such other and further relief as the Court deems just and proper to ensure A.H. is not deprived of education due to custody, placement, or interagency responsibility disputes.

### CLAIM NO. 7 – ATTORNEYS FEES AND COSTS

249.   D.H. does hereby reassert all preceding paragraphs as if specifically set forth herein verbatim

250.   Plaintiffs bring this civil action, in part, pursuant to 20 U.S.C. § 1415(i)(2)(A) seeking judicial review and appropriate relief under the IDEA.

251.    If Plaintiffs are the prevailing party, in whole or in part, in this action or in the related administrative proceedings at issue, Plaintiffs are entitled to an award of reasonable attorneys' fees as part of the costs under 20 U.S.C. § 1415(i)(3)(B).

252.    Plaintiffs request an award of taxable costs and allowable litigation expenses pursuant to 20 U.S.C. § 1415(i)(3)(B), 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54(d), including but not limited to filing fees, service fees, transcript costs, copying costs, and other costs recoverable by law.

253.    Plaintiffs further request that any reduction limitations asserted by Defendants under 20 U.S.C. § 1415(i)(3)(F) be denied or not applied to the extent Defendants unreasonably protracted the final resolution of this controversy or otherwise fall within the exceptions stated in 20 U.S.C. § 1415(i)(3)(G).

254.    Plaintiffs request that the Court award reasonable attorneys' fees and costs incurred at the administrative level to the extent permitted by 20 U.S.C. § 1415(i)(3)(B) and applicable law, and attorneys' fees and costs incurred in this civil action.

255.    Plaintiffs request such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court Issue:

A.  An order receiving and reviewing the complete administrative record for SDE No. H-25-05-23A(1) and SDE No. H-25-05-23A(2), including all transcripts, admitted exhibits, and written submissions.

B. An order reversing, vacating, or setting aside the March 23, 2026 Memorandum Decision and Order in SDE No. H-25-05-23A(1) (Hunden v. Kuna School District No. 3), and remanding for further administrative proceedings consistent with the Court's ruling, or alternatively entering judgment on the merits as authorized by 20 U.S.C. § 1415(i)(2)(C).

C. An order reversing, vacating, or setting aside the March 23, 2026 Memorandum Decision and Order in SDE No. H-25-05-23A(2) (Hunden v. Pocatello-Chubbuck School District No. 25), and remanding for further administrative proceedings consistent with the Court's ruling, or alternatively entering judgment on the merits as authorized by 20 U.S.C. § 1415(i)(2)(C).

D. An order reversing, vacating, or setting aside all interlocutory decisions and orders.

E. A declaratory judgment that one or more Defendants violated the IDEA and denied A.H. a free appropriate public education, including by failing to comply with IDEA procedural safeguards, failing to provide educational services during periods of hospitalization or placement transition as required by law, failing to develop or revise an IEP and behavior supports as necessary to enable educational access, and failing to provide FAPE in the least restrictive environment, as established by the preponderance of the evidence.

F. An award of compensatory education, as equitable relief, sufficient to remedy all loss of educational opportunity, regression, and missed services caused by Defendants' violations, in an amount and form to be determined by the Court,

including authority for the Court to order the parties to convene an IEP team meeting to design a compensatory education plan, to order an independent educational evaluation if necessary to design compensatory services, and to set deadlines for implementation.

G. An Order awarding attorneys' fees and costs incurred in litigating both the administrative due process complaint and the instant action pursuant to 20 U.S.C. § 1415(i)(2)(B);  An award of reasonable attorneys' fees and costs to Plaintiffs as prevailing parties, pursuant to 20 U.S.C. § 1415(i)(3)(B) and other applicable authority, including taxable costs under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d), and,

H.      An Order awarding such other and further relief as the Court deems just and proper.

DATED this 4th day of May, 2026.

BECKETT LAW FIRM

Kristian Beckett,
Attorney and Co-Counsel for Plaintiffs

# Exhibit A

Judson W. Tolman
1775 Cove Road
Weiser, Idaho 83672
Telephone:  (208) 571-1012
juddandlara@gmail.com
Hearing Officer

BEFORE THE OFFICER FOR THE

IDAHO DEPARTMENT OF EDUCATION

| | | |
|---|---|---|
| D. H. as legal guardian and parent of A.H., a minor, | ) ) ) | Case No. H-25-05-23A(1) |
| | ) | |
| Petitioner, | ) | MEMORANDUM DECISION |
| | ) | |
| vs. | ) ) | |
| | ) | |
| KUNA SCHOOL DISTRICT, #3, | ) | |
| | ) | |
| Respondent. | ) ) | |

**PROCEDURAL HISTORY**

Petitioner submitted a Request for Due Process Hearing on May 23, 2025, ("Initial Complaint"), naming as a respondent/defendant the Idaho State Department of Education ("ISDE").   An Objection to the Sufficiency of Petitioner's Due Process Hearing Request Under 34 CFR § 300.508(d)(1) was submitted on behalf of the ISDE by the Idaho Attorney General on June 4, 2025.   An Order granting the ISDE's Objection to the Sufficiency of the Initial Complaint and allowing Petitioner to submit an amended complaint was issued on June 4, 2025. The Order set a deadline of June 13, 2026, for Petitioner to submit an amended complaint meeting the requirements of 34 CFR § 300.508(b).

Petitioner submitted an Amended Complaint on June 13, 2026.  The Amended Complaint restated claims against ISDE.  The Amended Complaint also added three additional respondents, asserting new claims against each new respondent.  The three new respondents were:  The Idaho State Board of Education ("ISBE"); Kuna Joint School District No. 3 ("KSD"); and Pocatello-Chubbuck School District No. 25 ("PCSD").

An Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request was submitted by ISDE on June 25, 2025.  The Amended Complaint failed to meet the sufficiency requirements as to respondents ISDE and ISBE. An Order on Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request was issued on June 27, 2025, dismissing the Amended Complaint as to respondents ISDE and ISBE.  The Amended Complaint was not dismissed as to KSD or PCSD.

On June 26, 2026, Respondent PCSD, joined by KSD, submitted a Motion to Bifurcate the hearing into two hearings one for each respondent.  Petitioner responded to the Motion to Bifurcate on July 3, 2025.  Petitioner's response set forth several requests relating to bifurcation but did not object to the Motion to Bifurcate.  On Order bifurcating the hearing was issued on July 7, 2025, identifying the two hearings as follows:  A. H. vs. Kuna School District, H-25-05-23A(1); and A. H. v. Pocatello-Chubbuck School District, H-25-05-23A(2).

Following a conference call with legal counsel for the parties, Scheduling Orders were issued on July 27, 2025, setting a two-day due process hearing for A. H. v. KSD on August 28-29, 2025 and a two-day due process hearing for A. H. v. PCSD on September 8-9, 2025.  On August 25, 2025, Petitioner submitted a request to vacate these hearings and to reschedule for some time after October 20, 2025, due to Petitioner's unavailability.  The hearings were vacated by orders issued on August 26, 2025.

Following a conference call with legal counsel on September 26, 2025, the due process hearings were rescheduled for A. H. v. KSD on November 10-11, 2025, and A. H. v. PCSD on November 20-21, 2026.  Petitioner submitted a Second Request for Continuance on November 2, 2025, requesting to vacate the scheduled hearings until after December 2025.

During a conference call on December 15, 2025, legal counsel for the parties and the Hearing Officer agreed upon hearing dates for A. H. v. KSD on February 5-6, 2026, and for A. H. v. PCSD on February 9-10, 2026.

### BURDEN OF PROOF

"The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005).   U.S. Supreme Court recognized that the protections built into the IDEA by Congress ensure that parents have access to materials and evidence needed to meet their burden of proof and to ensure that school districts bear no unique informational advantage. *Schaffer v. Weast* at 62.

The Ninth Circuit Court of Appeals similarly places the burden of proof on the party seeking relief.  "[T]he ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims, … [a]bsent some reason to believe that Congress intended otherwise, … we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief." *Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007).

Applying *Schaffer v. Weast*, and the Ninth Circuit opinion in *Van Duyn*, Petitioner bears the burden of proof on Petitioner's claims raised in the Amended Complaint. [1]

---

[1]  Memorandum Decisions are being issued separately for each due process hearing:  H-25-05-23A(1) and H-25-05-23A(2).  The Procedural History and Burden of Proof sections in both Memorandum Decisions are identical and the statements therein apply to both due process hearings.

**ISSUES**

Petitioner's Amended Complaint alleges:

- KSD failed to follow and implement Student's IEP;

- KSD failed to develop an appropriate IEP, including failure to conduct an FBA and develop an appropriate BIP; and

- KSD filed to provide Student with a FAPE in the LRE.

**DUE PROCESS HEARING**

A two-day due process hearing was held on February 5-6, 2026, at the Kuna School District offices.

Petitioner's exhibits 1 through 15 and Respondents exhibits 200 through 214 were admitted pursuant to stipulation of the parties.

The following witnesses testified at the hearing:

- Anna Steinbis, Kuna High School Vice Principal and Special Education Administrator

- Michelle Manual, former Vice Principal at Fremont Middle School

- Tanya Ambler, Teacher at Gateways in Nampa

- David Hunden, Petitioner - Parent

- Deborah Smith, School Psychologist

- Cayla Mladenik, School Psychologist

- Jessy Diaz, Behavior Consultant

- Becky Freitag Hunden, Parent

- Anna Lovelady, 2023-'24 Kuna High School Vice Principal and Special Education Administrator

- Jessica Vachon, ERR Special Education Teacher

- Colin Carr, St. Lukes Hospital School Teacher

- Wynette Mellen, Special Education Teacher

- Samantha Watters, Special Education Teacher

## FINDINGS OF FACT

1. During Student's 7th grade school year, Student transferred to Fremont Middle School in the Kuna School District on September 20, 2021. Prior to attending Fremont Middle School Student attended Basin Elementary School in Idaho City, Idaho. Ex. 1.

2. Student meets the Idaho State eligibility criteria requirements for special education services under the categories of Autism Spectrum Disorder and Language Impairment.. Student is also diagnosed with Type 1 Diabetes. Ibid.

3. Student has a history of exhibiting aggressive maladaptive behaviors requiring adult supervision throughout the school day. Ibid.

4. Student attended the eighth grade at Fremont Middle School in the Kuna School District during the 2022-2023 school year. Ex. 2.

5. Petitioner participated in some of Student's Individual Education Plan ("IEP") team meetings during the 2022-2023 school year. Tr. 177:8-12.

6. On November 15, 2022, an IEP team meeting was held where Petitioner attended and participated. Ex. 2. The services, accommodations, modifications and goals in the

November 15, 2022, IEP ("Student's IEP") were agreed to by the IEP team.  Ex. 200, p. 310-312.

7. Student's IEP includes a Behavior Intervention Plan ("BIP").  Ex. 3, 200, p. KSD 263.

8. On March 16, 2023, Student was admitted to St. Luke's Hospital and discharged on May 27, 2023.  Tr. 422:8-10; 423:24-25.

9. At the due process hearing, Petitioner testified as follows:

> "Q [By Petitioner's legal counsel]. So during the time that [Student] was admitted to the hospital during his eighth grade – fourth quarter of his eighth grade year, did [Student] receive an education at St. Lukes?
>
> A [By Petitioner].  So I can tell you what I remember, I had some contact with the school. I can't remember – I'm sorry. I know I had called the school .  I don't quite recall you know, exactly what it was, you know, while [Student] was there.
>
> There was somebody at St. Luke's, I don't recall his name, but to my – to the best of my knowledge, there wasn't a lot, if anything, that was done, you know, as far as education.  To my knowledge, nobody from the School District ever came to the hospital to do anything. . . ."  Tr. 180:9-23.

10. Student was readmitted to St. Luke's Hospital the next day, May 28, 2023, and remained there until sometime in August, 2023.  Ibid; 424:1-8; 433:10-17.

11. Sometime in August, 2023, Student moved from St. Lukes Hospital to treatment facility, Aurora Behavioral Health System ("Aurora"), in Arizona.  Tr. 181:23-183:25; 424:1-6; 433:10-17.

12. In October, 2023, Student was discharged from Aurora to go back to his parent's home in Idaho.  Tr. 186:10-13;

13. KSD did not become aware that Student would enroll at Kuna High School until early October, 2023.  Tr. 456:16-20; 479:25-480:22.

14. Prior to being contacted about Student's enrollment at Kuna High School in early October 2023, KSD had not been informed and was unaware that Student was residing out of the State of Idaho in a treatment center. Tr. 457:22-458:1.

15. At transition meetings in October 2023, prior to Student attending Kuna High School, KSD discussed with Student's mother that the November 15, 2022, IEP would be used for Student at Kuna High School.  Student's mother did not object to or disagree with use of the November 15, 2022, IEP.  Tr. 125:4-126:2.

16. Prior to Student's attending school at Kuna High School on October 23, 2023 Petitioner did not participate in meetings or discussions about enrolling Student in the Kuna School District.  Tr. 186:10-24.

17. In preparation for Student's return to the Kuna School District, KSD had multiple meetings with staff, Aurora and parents.  Tr. 520:-25; Ex. 204, KSD 0000449.  KSD requested information about Student's behaviors and the interventions used by Aurora for the purpose of "how to best acclimate both [Student] and our staff to [Student's] return."  Ibid.  KSD sent "Request for Information" forms to Student's parents to obtain their consent for release of records from Aurora.  Tr. 459:12-460:12. Ultimately, KSD received no behavioral records from Aurora.  Tr. 361:6-24.  Information from Student's attendance at Fremont Middle School was shared with Kuna High School.  Tr. 358:16-359:25.  KSD reassigned staff from Fremont Middle School, who had previously worked

with Student, to assist with Student's transition to Kuna High School.  Tr. 514:24-515.6. KSD assigned a behavioral interventionalist to support Student and to be present when Student arrived on his first day of school.  Tr. 357:3-4.

18. Student's mother participated in the transition meetings prior to October 23, 2023.  She provided input and was listened to during these virtual meetings.  Tr. 521:12-522:3.

19. Student was enrolled at and began attending Kuna High School on October 23, 2023. Tr. 515;520;578; 619-20.

20. Student's November 15, 2022, IEP had not expired and was adopted by Kuna High School, including the BIP which was part of the November 15, 2022 IEP.  Tr. 317:25-318:22; 479:25-480:22.

21. Student attended Kuna High School for six days from October 23, 2023, through October 30, 2023.

   a. Day 1:   Student arrived at 7:30 a.m. and was met by the behavioral interventionalist.  Student eloped multiple times throughout the day, inside and outside the building.  In response to Student's behaviors, KSD staff provided and offered the interventions called for in Student's BIP. Tr. 481; 493-494; 619-628; Exh. 16.

   b. Day 2:  Student arrived early and eloped before school formally began. There were two more elopements.  During the later elopement Student attempted to elope toward a high traffic street in front of the high school.  Staff intervened to prevent Student from reaching the street by keeping Student in the school vestibule until Student could de-escalate.  Student repeatedly hit his head into the vestibule window. KSD staff responded as required by Student's BIP by

positioning themselves appropriately and providing verbal cues while maintaining safe distancing.  Later in the day, Student was restrained due to Student punching another person in the head.  Student went home early with Student's mother. Tr. 632-33; 394-400; 482; 488; 650; 656.

c.  Day 3:   Student eloped multiple times during the day and struck a teacher. Student was in class for approximately 18 percent of the day. In response to Student's behaviors KDS staff provided interventions called for by Student's BIP. Tr.493; 635-648.

d.  Day 4:   Data recorded on this day reflects five behavioral incidents including a 45–60-minute elopement.  KSD convened a meeting including representatives from Idaho Department of Health and Welfare.  A licensed Behavior Analyst from the Idaho Department of Health and Welfare agreed to come to school the following week to conduct direct observation of Student and provide additional behavioral consultation.  KSD assigned a new paraprofessional to Student to supplement the existing support personnel.   Tr. 492-495; 498; 646.

e.  Days 5 and 6:  No evidence was presented at the hearing as to events at school during days 5 and 6.

22. On the night of October 30, 2026, (i.e., Day 6) due to a violent episode at home police were called to Student's home and Student was taken to St. Luke's Hospital.  Tr. 500; 534.

23. During the time that Student attended Kuna High School in October,2023, a consent for a Functional Behavior Assessment was sent to Student's Parent.  The consent was not returned.  Student's mother indicated that the consent was misplaced so the school sent a

second consent form to the Parent. The second consent form was not returned to the school by Petitioner or Student's mother. Tr. 121-22; 300:16-301:9; 306:8-12,

24. On November 9, 2023, an IEP Team Meeting was held for the annual review of Student's IEP. At the time of the meeting the IEP Team knew that Student's mother was withdrawing Student from KSD. The IEP team updated the IEP so that it wouldn't expire. Student's mother attended the IEP meeting. The IEP Team, including Student's mother, agreed on keeping the same goals and BIP from the last year's IEP. Tr. 500:19-504:11; 505:12-506:5; 612:17-614:11.

25. On the same day as the IEP Team Meeting, Student's mother withdrew and unenrolled Student from Kuna High School. Tr. 106:24-107:8; 503:2-504:11; 525:18-20; 534:25-535:2; 545:17-22.

26. KDS unenrolled Student the next day on November 10, 2023, at the request of Student's mother. Tr. 500 – 506; 525:17-19.

27. Following the IEP Team Meeting, KSD issued a Written Notice on November 9, 2023, explaining that Student was being unenrolled by KSD, stating, "Student has withdrawn from Kuna School District. Last day of attendance was 10/30/23.". Ex. 8; Tr. 510:14-511:3.

## CONCLUSIONS OF LAW

I. **Petitioner's claims arising from events occurring prior to June 16, 2023, are barred by the IDEA's two-year limitation of actions**.

Pursuant to the IDEA, "a parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint,

or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows." See 20 U.S.C. §1415(f)(3)(C); see also 34 C.F.R. §300.507.  Interpreting this two-year limitation in the IDEA, the Ninth Circuit Court of Appeals clarified that the discovery rule is followed in the Ninth Circuit, namely, the two-year limitation begins to run when the "parent or agency knew or should have known about the alleged action that forms the basis of the complaint.  See *Avila v. Spokane Sch. Dist*. 81, 852 F.3d 936 (9th Cir. 2017).

Petitioner testified, that during the fourth quarter of Student's eighth grade year (2022-2023 school year) while Student was admitted to St. Luke's Hospital, "to the best of my knowledge there wasn't a lot, if anything, that was done, you know, as far as education.  To my knowledge, nobody from the School District ever came to the hospital to do anything."  See Finding of Fact No.9.  Petitioner asserts that Respondent was responsible for providing educational services to Student during Student's hospitalizations but failed to do so.  Petitioner's testimony shows that during the fourth quarter of the 2022-2023 school year Petitioner knew or should have known about the alleged actions (or in this case alleged inaction) of the School District that form the basis of Petitioner's claim.  The IDEA's two-year statute of limitations, as interpreted in <u>Avila v. Spokane Sch. Dist</u>., began to run in the fourth quarter of the 2022-2023 school year regarding Petitioner claim that Respondent failed to provide education services during Student's hospitalizations.

Petitioner submitted the due process hearing request naming and alleging claims against this Respondent on June 13, 2025.  Accordingly, Petitioner's claim that Respondent failed to provide education services to Student during the time that Student was hospitalized during the 2022-2023 school year are barred by the IDEA's two-year limitation.

## II.  Petitioner did not meet Petitioner's burden of proof to show that Respondent failed to follow Student's IEP for provision of education services during the summer of 2023.

Petitioner's Amended Complaint alleges "Respondent failed to follow and implement Student's IEP". Amended Complaint, p.2.  Petitioner further alleges that Respondent failed to provide special education to Student during "extended hospital confinement."  Petitioner's Post

Hearing Brief, p. 4.  Student was admitted to St. Luke's Hospital on May 28, 2023, and remained there until August when Student moved to Aurora in Arizona.  Student moved back to the state of Idaho on or about October 19, 2023.

Student's IEP states, "It has been determined that [Student] is not eligible for extended school year services."  Ex. 2, p. AH000097.    Student's IEP did not provide Extended School Year (ESY) services for Student and Petitioner failed to show that Student was entitled to special education services during the summer of 2023.  Respondent did not fail to provide educational services during Student's "extended hospital confinement" in the summer of 2023 because Student was not entitled to special education services in the summer of 2023.

### III. Respondent was not obligated to provide special education services to Student during the time that Student was at Aurora.

Sometime in August 2023, Student moved from Idaho to Aurora in Arizona.  Student returned to the state of Idaho on October 19, 2023, and was enrolled at Kuna High School to begin attending classes on October 23, 2023.   There is no dispute that Student was living in Arizona from sometime prior to the beginning of the 2023-2024 school year until October 19, 2023.  Petitioner argues that, even though Student was residing out of the State of Idaho, because Student's parents resided in the Kuna School District then KSD was responsible for providing special education services (i.e., a Free Appropriate Public Education, "FAPE") to the Student.

Contrary to Petitioner's argument, the requirement to provide FAPE to children with disabilities is limited to those children "residing in the State."

"A free and appropriate public education must be available to all <u>children residing in the State</u> between the ages of 3 and 21 . . .

"The obligation to make FAPE available to each eligible <u>child residing in the State</u> begins no later than the child's third birthday . . ."

34 CFR §300.101(a) and (b)(i); see also 20 U.S.C. §1412(a)(1)(A).

The obligation to provide FAPE is not tied to the residency of the parents but rather to the residency of the "child" or Student.  See *Rabinowitz v. New Jersey State Bd. of Educ.*, 550 F.Supp 481 (DC NJ 1982)(holding that state where Student resides is obligated to provide FAPE when Student is in the state for bona fide non-educational reason notwithstanding parents are domiciled in another state); *Bellflower Unified Sch. Dist. v. Lua*, 832 F.App'x 495 (9th Cir. 2020)(holding school district of student's residency is obligated to provide FAPE).

In the present case, from August 2023 until October 19, 2023, while the Student was residing at Aurora in the state of Arizona for a bona fide non-educational reason, KSD was not obligated to provide FAPE to the Student.

### IV. Petitioner did not show that KSD failed to develop an appropriate IEP or failed to provide Student with FAPE while enrolled at Kuna High School.

a. <u>Student's IEP was reasonably calculated to enable the Student to make progress in light of the Student's circumstances</u>.

The U.S. Supreme Court in *Endrew F. v. Douglas County School Dist.*, 197 L.Ed.2d 335, 137 S.Ct. 988, 999 (2017), ruled "To meet the substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

Student's IEP, implemented November 15, 2022, includes goals in the areas of reading, mathematics, behavior, communication and functional life skills.  In connection with these goals, the IEP sets forth:

- information reviewed by the IEP team, including parental input and concerns.

- service minutes in each of the goal areas.

- Student's Least Restrictive Environment ("LRE") as being in the general education environment 32.3% of the time.

Student's IEP included a Behavioral Intervention Plan ("BIP"). Ex. 200, KSD 000263-266; Tr. 670:6-671:13.

Student's IEP satisfies the considerations that must be made when developing or amending an IEP. See 34 CFR §300.324(a) and (b).

Petitioner attended the November 15, 2022, IEP Team meeting and did not object to any part of Student's IEP. Also, during Petitioner's testimony at the due process hearing Petitioner did not testify as to any concerns with Student's IEP. Student's mother also testified at the due process hearing and did not express or testify to any concerns with Student's IEP.

While attended Fremont Middle School in the eighth grade Student was making progress toward his IEP goals. Tr. 665:11-22; 673:3-19; 681:18-20; Ex. 200, KSD 000315-319.

The above information, including Petitioner's and Student's mother's failure to object, leads to the conclusion that Student's IEP was reasonably calculated to enable Student to make progress in light of Student's circumstances.

    b. <u>Student's IEP from the 2022-23 school year at Fremont Middle School was still in effect at the time Student was enrolled at and attended Kuna High School.</u>

When a student transfers from one school to another school within the state, the receiving school must provide FAPE consistent with the IEP from the previous school until the new/receiving school conducts an evaluation, if necessary, and develops, adopts and implements a new IEP, if appropriate. See 34 CFR §300.323(e).

At the time of Student's enrollment at Kuna High School in October 2023, Student's last educational placement was at Fremont Middle School. Tr. 479L25-480:22.   Student's IEP from Fremont Middle School had not expired and was valid until November 15, 2023.  See 34 CFR §300.324(b) (requiring review of IEP at least annually).

Petitioner argues that KSD denied Student FAPE by failing to amend Student's IEP prior to transitioning Student from middle school to high school.  Petitioner's Post Hearing Brief, p. 6. Petitioner's argument is not based on the law or reason.  The above cited regulations do not require KSD to amend Student's IEP without the opportunity to observe and evaluate Student. Contrary to Petitioner's argument, this regulation requires KSD to use the IEP from Fremont Middle School until KSD conducts an evaluation and implements a new IEP.  Petitioner would have KSD blindly amend Student's IEP without the information needed to customize the IEP to Student's needs as required by 34 CFR §300.324.

    c.   <u>During Student's enrollment at Kuna High School KSD appropriately implemented Student's IEP and began the process to amend Student's IEP</u>.

At the due process hearing evidence was presented showing that KSD took actions to prepare for Student's return to Kuna School District shortly after being informed that Student would be returning the Kuna School District.   These preparations included meetings with Student's mother.

Student's six days at Kuna High School were difficult; however, KSD followed and implemented Student's IEP and KSD began the process of gathering information to determine what amendments to Student's IEP would be appropriate.  Beginning Student's first day at school, KSD began tracking Student's behaviors including a summary of observations and identifying elopement patterns.  Tr. 630-631.  KSD communicated with parents every day. Tr.

488:20-22.  KSD sent two Consent For Assessment forms to Student's mother but a signed form was not returned by Student's mother.  Tr. 121-122; 333:1-12.  The failure by Student's mother to provide consent for assessment impeded KSD's efforts to properly assess and evaluate Student, develop a BIP and amend Student's IEP.  KDS's obligation to provide FAPE to Student ended when Student's mother withdrew Student from Kuna High School.

As set forth in subsections a through c above, Respondent implemented Student's IEP, began the process for reviewing and amending Student's IEP, if needed, and offered FAPE to the Student as required by the IDEA.  Petitioner failed to meet its burden of proof on Petitioner's claims that KSD failed to develop an appropriate IEP or failed to provide Student FAPE while enrolled at Kuna High School.

## CONCLUSION

Petitioner did not meet its burden of proof on any of Petitioner's claims stated in the Amended Complaint.  Petitioner's claims arising from events prior to June 16, 2023, are barred by the IDEA two-year limitation of actions.  Respondent was not responsible for providing educational services to Student during the summer of 2023 or when Student resided outside the State of Idaho.  Petitioner failed to meet its burden of proof on claims that Respondent failed to develop an appropriate IEP or provide Student with FAPE.  Accordingly, Petitioner's claims are DENIED.

So ORDERED this __23rd__ day of March, 2026.

_____/s/_____
Hearing Officer

## NOTICE

Any party aggrieved by the findings and decision herein has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under 20 U.S.C. §1415(i)(1). The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. (See 20 U.S.C. §1415(1)(2)). 20 U.S.C. §1415(i)(2)(a) provides that: Time limitation: The party bringing the action shall have 90 days from the date of this decision to file a civil action, **or if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by State law. (Emphasis Added)**.

CERTIFICATE OF SERVICE

I DO HEREBY certify that on the __23rd__ day of March, 2026, I caused to be served on the following a true and correct copy of the foregoing document by the method indicated below:

Lyndon Nguyen
NGUYEN LAW
455 E. Danika Lane
Garden City, Idaho 83714
T: (208) 914-5137
E: lyndonlegal@gmail.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

Kristian Beckett
BECKETT LAW FIRM
P.O. Box 4, Kuna, Idaho 83634
T: (425) 654-1142
E: kristian@beckettlegal.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

Anne S. Magnelli
Nicole M. Jenkins
John J. Maas
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426, Boise, ID  83707-7426
amagnelli@ajhlaw.com
njenkins@ajhlaw.com
jmaas@ajhlaw.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

By: ___/s/_____
Hearing Officer

Page 18 of 18   HUNDEN v. KSD - MEMORANDUM DECISION

# Exhibit B

Judson W. Tolman
1775 Cove Road
Weiser, Idaho 83672
Telephone:  (208) 571-1012
juddandlara@gmail.com
Hearing Officer

BEFORE THE OFFICER FOR THE

IDAHO DEPARTMENT OF EDUCATION

| | |
|---|---|
| D. H. as legal guardian and parent of A.H., a minor, <br><br> Petitioner, <br><br> vs. <br><br> POCATELLO – CHUBBUCK SCHOOL DISTRICT, #25, <br><br> Respondent. | ) <br> ) Case No. H-25-05-23A(2) <br> ) <br> ) <br> ) MEMORANDUM DECISION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PROCEDURAL HISTORY**

Petitioner submitted a Request for Due Process Hearing on May 23, 2025, ("Initial Complaint"), naming as a respondent/defendant the Idaho State Department of Education ("ISDE").    An Objection to the Sufficiency of Petitioner's Due Process Hearing Request Under 34 CFR § 300.508(d)(1) was submitted on behalf of the ISDE by the Idaho Attorney General on June 4, 2025.  An Order granting the ISDE's Objection to the Sufficiency of the Initial Complaint and allowing Petitioner to submit an amended complaint was issued on June 4, 2025. The Order set a deadline of June 13, 2026, for Petitioner to submit an amended complaint meeting the requirements of 34 CFR § 300.508(b).

Petitioner submitted an Amended Complaint on June 13, 2026. The Amended Complaint restated claims against ISDE. The Amended Complaint also added three additional respondents, asserting new claims against each new respondent. The three new respondents were: The Idaho State Board of Education ("ISBE"); Kuna Joint School District No. 3 ("KSD"); and Pocatello-Chubbuck School District No. 25 ("PCSD").

An Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request was submitted by ISDE on June 25, 2025. The Amended Complaint failed to meet the sufficiency requirements as to respondents ISDE and ISBE. An Order on Objection to the Sufficiency of Petitioner's Amended Due Process Hearing Request was issued on June 27, 2025, dismissing the Amended Complaint as to respondents ISDE and ISBE. The Amended Complaint was not dismissed as to KSD or PCSD.

On June 26, 2026, Respondent PCSD, joined by KSD, submitted a Motion to Bifurcate the hearing into two hearings one for each respondent. Petitioner responded to the Motion to Bifurcate on July 3, 2025. Petitioner's response set forth several requests relating to bifurcation but did not object to the Motion to Bifurcate. On Order bifurcating the hearing was issued on July 7, 2025, identifying the two hearings as follows: A. H. vs. Kuna School District, H-25-05-23A(1); and A. H. v. Pocatello-Chubbuck School District, H-25-05-23A(2).

Following a conference call with legal counsel for the parties, Scheduling Orders were issued on July 27, 2025, setting a two-day due process hearing for A. H. v. KSD on August 28-29, 2025 and a two-day due process hearing for A. H. v. PCSD on September 8-9, 2025. On August 25, 2025, Petitioner submitted a request to vacate these hearings and to reschedule for some time after October 20, 2025, due to Petitioner's unavailability. The hearings were vacated by orders issued on August 26, 2025.

Following a conference call with legal counsel on September 26, 2025, the due process hearings were rescheduled for A. H. v. KSD on November 10-11, 2025, and A. H. v. PCSD on November 20-21, 2026. Petitioner submitted a Second Request for Continuance on November 2, 2025, requesting to vacate the scheduled hearings until after December 2025.

During a conference call on December 15, 2025, legal counsel for the parties and the Hearing Officer agreed upon hearing dates for A. H. v. KSD on February 5-6, 2026, and for A. H. v. PCSD on February 9-10, 2026.

## BURDEN OF PROOF

"The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). U.S. Supreme Court recognized that the protections built into the IDEA by Congress ensure that parents have access to materials and evidence needed to meet their burden of proof and to ensure that school districts bear no unique informational advantage. *Schaffer v. Weast* at 62.

The Ninth Circuit Court of Appeals similarly places the burden of proof on the party seeking relief. "[T]he ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims, … [a]bsent some reason to believe that Congress intended otherwise, … we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief." *Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007).

Applying *Schaffer v. Weast*, and the Ninth Circuit opinion in *Van Duyn*, Petitioner bears the burden of proof on Petitioner's claims raised in the Complaint. [1]

---

[1] Memorandum Decisions are being issued separately for each due process hearing: H-25-05-23A(1) and H-25-05-23A(2). The Procedural History and Burden of Proof sections in both Memorandum Decisions are identical and the statements therein apply to both due process hearings.

**ISSUES**

Petitioner's Amended Complaint alleges:

- PCSD failed to hold an appropriate IEP meeting;

- PCSD failed to include parent in the decision-making process;

- PCSD failed to provide written notice;

- PCSD failed to obtain consent prior to implementing services;

- PCSD failed to develop an appropriate IEP and/or transfer IEP in the LRE including conducting an FBA and developing an appropriate BIP;

- PCSD failed to implement Student's IEP; and

- PCSD failed to provide Student with a FAPE in the LRE.

**DUE PROCESS HEARING**

A one-day due process hearing was held on February 9, 2026, at the Pocatello-Chubbuck School District offices.[2]

Petitioner's exhibit 18 and Respondents exhibits 200 through 209 were admitted pursuant to stipulation of the parties.

The following witnesses testified at the hearing:

- Joshua Ghan, Behavior Interventionist for Prosper DDA

- Carly Anderson, Teacher Highland High School

- Amy Holloway, School Psychologist

- Robert Lewis, Owner of Hinge Point Youth Homes

---

[2] The due process hearing in this matter was scheduled for two days; however, only one day was needed for both parties to present their case-in-chief.

- Dianna Szelmeczka, Special Education Administrative Assistant

- Janelle Harris, PCSD representative

## FINDINGS OF FACT

1. Student meets the Idaho State eligibility criteria requirements for special education services under the categories of Autism Spectrum Disorder and Language Impairment.. Student is also diagnosed with Type 1 Diabetes. Ex. 201b.

2. Student has a history of exhibiting aggressive maladaptive behaviors requiring adult supervision throughout the school day. Ibid.

3. Student moved in the area serviced by the PCSD in December 2023, then started school at Highland High School the first week of January 2024. Tr. 76:13-19; 177:22-178:3.

4. Student's IEP from Kuna High School was received by PCSD. PCSD conducted a sufficiency review of Student's IEP from the Kuna School District. The IEP was determined to be insufficient. The eligibility was sufficient and Student's Behavioral Intervention Plan ("BIP") was found to be sufficient. Tr. 240:4-12.

5. Student's IEP was amended on January 17, 2024, to adjust the Student's IEP from the Kuna School District to be consistent with the services available at PCHS. Ex. 202; Tr. 82:6-12; 83:21-24.

6. PCHS provided Written Notice of the January 17, 2024, IEP amendment. Ex. 18, p. 52; Tr. 86-87.

7. The Written Notice provides, "The parent or adult student and the District agree that the student's annual IEP may be amended to address the following contents without convening

an IEP team meeting.  These amendments will be incorporated into the student's IEP dated 11/9/2023."  Ex. 202.

8.  On January 17, 2026, PCSD adopted the BIP from the Kuna IEP.  Tr. 98:14-99:2.   This BIP was followed by PCSD for the time that Student school in the PCSD.  Tr. 121:13-21.

9.  The first step in conducting a Functional Behavior Assessment ("FBA") is to obtain consent from the parent or guardian.  PCSD obtained consent to do an FBA for Student. Tr. 171:10-12; 216:13-18.

10. PCSD conducted a Functional Behavior Assessment ("FBA"), but kept the existing BIP including the skills that were necessary based on the FBA.  Tr. 222:18-223:6.

11. The IEP was amended to provide more service minutes to the Student than were called for under the IEP from Kuna School District.  The IEP was amended to give more time for behavior intervention.  Math and reading minutes were increased from 300 minutes per week to 360.  Tr. 92:21-93:10.

12. Student's mother was a member of the Evaluation Team at PCSD for determining Student's eligibility and completing an Eligibility Report dated February 2, 2024.  Student's mother signed the Eligibility Report and indicated her agreement with the Eligibility Report by marking "Agree" on the first page of the Report.  Ex. 118, PSD 000067-70.

13. Generally, Student stayed at school for the entire school day.  Tr. 103:21-24.

14. Student received the full number of service minutes reflected in the amended IEP for math, behavior, reading and communication.  Tr. 105:2-6.

15. The amended IEP removed function life skills from Student's IEP because PCSD worked on many functional life skills in the time that Student was receiving classroom instruction. Tr. 112:20-113:2.

16. At PCSD, Student had interaction with non-disabled peers in adaptive P.E. and when non-disable peers provided tutoring in the Extended Recourse Room.  Tr. 93:11-95:9.

## CONCLUSIONS OF LAW

It is difficult in this case to determine what Petitioner is alleging against PCSD.  The Amended Complaint makes seven general allegations with no statement of facts or arguments that provide clarity as to how PCSD allegedly failed in its obligations to provide FAPE to the Student. Likewise, Petitioner's Post Hearing Brief fails to clarify the claims in the Amended Complaint, rather, Petitioner's sole argument against PCSD in Petitioner's Post Hearing Brief is that there is a contradiction between testimony of a witness in a prior, unrelated due process hearing and evidence presented in this case.  Petitioner does not argue or allege that the evidence presented at the due process hearing in this case shows that PCSD failed, procedurally or substantively, to provide Student with FAPE.

I.    **Undisputed evidence presented in this case refutes each of the general allegations against PCSD in Petitioner's Amended Complaint.**

a.    <u>PCSD did not fail to hold an appropriate IEP meeting</u>.

Petitioner does not identify when or for what reason PCSD should have held an IEP meeting or why an IEP meeting held by PCSD was not appropriate.    Student's IEP dated November 9, 2023, ("Student's IEP") was received by PCSD from the transferring school district, Kuna School District.  On January 17, 2024, Student's IEP was amended to align the services required by Student's IEP with the services available at PCSD.  Student's parent agreed to making the amendment without convening an IEP team meeting.  Other than this amendment to Student's IEP, there is no evidence in the record of events which may have necessitated an IEP team meeting.

b.    <u>PCSD included parent in the decision making process</u>.

Parent's concerns for enhancing Student's reading skills is recorded on the amendment to Student's IEP dated January 17, 2024. Ex. 118, PSD 000055. Written Notice of the Amendment to Individualized Education Program states that parent agreed to amend the IEP without an IEP team meeting, parent authorized PCSD to take the action described in the Written Notice, and the action was taken with parent's agreement and consent. The signature of Student's mother on the Written Notice is dated 2/13/24. Student's mother was a member of the Evaluation Team for determining Student's eligibility and completing an Eligibility Report dated February 2, 2024. Student's mother signed the Eligibility Report and indicated her agreement with the Eligibility Report by marking "Agree" on the first page of the Report. Ex. 118, PSD 000067-70. The evidence from the due process hearing cited in this paragraph shows parent's involvement in the decision-making process relating to Student's IEP and the provision of FAPE to the Student. Neither of Student's parents testified at the due process hearing to refute the evidence showing parents' involvement in the decision-making process. Petitioner has not identified, at the due process hearing or in Petitioner's Post Hearing Brief, an event or a decision when PCSD failed to involve parent in the decision-making process.

     c.  <u>PCSD provided Written Notice</u>.

The Written Notice for amendment of Student's IEP is cited in subsection b above. PCSD provided the Written Notice to, and it was signed by, Student's parent. Petitioner does not dispute that this Written Notice was provided to Student's parent nor has Petitioner alleged another Written Notice should have been provided.

     d.  <u>Parent consented to the provision of services to Student</u>.

Parent signed the Written Notice indicating parent's agreement with the amendment of Student's IEP and authorizing PCSD to change Student's IEP goals and amending the Student's IEP to align with what PCSD was working on with Student in class.

    e.   <u>PCSD developed an appropriate IEP, including conducting an FBA for an appropriate BIP.</u>

After observing Student for approximately two weeks and obtaining consent for a FBA, PCSD amended Student's IEP to align Student's goals with the services available at PCSD.  The amendment also increased the service minutes Student was receiving under Student's IEP. Tr. 216; 222:9-223:6; 92:15-93:10; 105:2-6; 112:20-113:10.    Contrary to Petitioner's claim, PCSD developed Student's IEP according to Student's needs and conducted an FBA that confirmed Student's BIP was appropriate.

    f.   <u>PCSD implemented Student's IEP and provided Student with FAPE.</u>

Testimony at the due process hearing consistently affirmed that PCSD implemented Student's IEP and provided FAPE to the Student.   Tr. 244:4-7.

## II.    The alleged evidentiary conflict raised by Petitioner does not support Petitioner's claims in this due process hearing.

Petitioner argues that the testimony of a witness, Kristen Quanrud from the Nampa School District, in a prior due process hearing contradicts the evidence presented in this case and that the current due process hearing should be determined in favor of Petitioner based on Ms. Quanrud's testimony.

    a.   <u>Testimony presented in the current due process hearing provides credible evidence as to Student's experience while at the Pocatello-Chubbuck School District.</u>

Ms. Quanrud's testimony cited by Petitioner relates Ms. Quanrud's recollection of hearsay conversations with an unknown and unidentified person at the PCSD. See Petitioner's Post Hearing Brief, p. 11-13. Ms. Quanrud had no personal knowledge of Student's experiences at the PCSD. In contrast to Ms. Quanrud's second-hand knowledge about Student's experiences, the testimonies of PCSD staff, *supra*, in the current case relate credible, first-hand knowledge of Student's experiences while at the PCSD. Petitioner's argument that Ms. Quanrud's testimony about Student's experiences at PCSD requires a ruling in favor of Petitioner fails when there is credible testimony relating first-hand knowledge from PCSD staff which is contrary to the claims alleged in Petitioner's Amended Complaint. Petitioner's failure in the prior due process hearing to present first-hand evidence concerning Student's experiences at PCSD does not preclude reliance upon more credible evidence presented in the present due process hearing.

  b. <u>Petitioner's arguments are based on misstatements of evidence in the present case and of the ruling in the prior due process hearing.</u>

In support of Petitioner's argument, Petitioner states:

> "Both PCSD and KJSD staff testified that the Student was not placed in the ERR and received a full day of education in the general education environment with supports and services." Petitioner's Post Hearing Brief, p.12.

> "The IEPs have not changed and clearly show that the Student received a full day of education in the general education environment at both Kuna and Pocatello School Districts, with relatively limited behaviors over a long time period." Ibid, at 13.

Petitioner's statements are not supported by the record. There is no testimony in this case that Student spent a "full day of education in the general education environment". To the contrary, at PCSD Student was not in the general education classroom but in the Extended Resource Room ("ERR") and the Disabled Learning Person classroom ("DLP"). Tr. 51-52. Student's IEP provided that Student would be with non-disabled peers only 32.3% of the time. Ex. 18, PSD

000041.  This time with non-disabled peers was accomplished by Student's participation in adaptive P.E. and when non-disabled peers came into the Student's classroom.  Tr. 94-95.

Petitioner's argument also misstates the ruling in the prior due process hearing. Petitioner states:

> ". . . this hearing officer relied solely on the testimony of Ms. Quanrud to find that the Student's extreme behaviors warranted placement in the homebound setting and excluding the Student from receiving a full day of education with non-disabled peers in Nampa."  Ibid.

Contrary to Petitioner's statement, the ruling on placement in the homebound setting in the prior hearing was based on application of evidence presented in the prior hearing to the four-factor balancing test for determining appropriate placement set forth by the Ninth Circuit in *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H by & through Holland*, 14 F.3d 1398 (9th Cir. 1994).  See Memorandum Decision, Hunden v. Nampa School District, H-25-02-24A, p. 17-21.

## CONCLUSION

Petitioner did not meet its burden of proof on any claims against PCSD asserted in the Amended Complaint.  Evidence presented at the due process hearing established that, contrary to Petitioner's claims, PCSD satisfied the procedural and substantive requirements of the IDEA.  The sole argument raised against PCSD in Petitioner's Post Hearing Brief is not supported by the evidence in this due process hearing.  Further, Petitioner's failure to meet its burden of proof in a prior due process hearing does not preclude reliance upon credible evidence presented in the current due process hearing.  Accordingly, Petitioner's claims are DENIED.

So ORDERED this  23rd  day of March, 2026.



/s/
Hearing Officer

**NOTICE**

Any party aggrieved by the findings and decision herein has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under 20 U.S.C. §1415(i)(1). The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. (See 20 U.S.C. §1415(1)(2)). 20 U.S.C. §1415(i)(2)(a) provides that: Time limitation: The party bringing the action shall have 90 days from the date of this decision to file a civil action, **or if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by State law. (Emphasis Added)**.

Page 12 of 13   HUNDEN v. PCSD - MEMORANDUM DECISION

CERTIFICATE OF SERVICE

I DO HEREBY certify that on the __23rd__ day of March, 2026, I caused to be served on the following a true and correct copy of the foregoing document by the method indicated below:

Lyndon Nguyen
NGUYEN LAW
455 E. Danika Lane
Garden City, Idaho 83714
T: (208) 914-5137
E: lyndonlegal@gmail.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

Kristian Beckett
BECKETT LAW FIRM
P.O. Box 4, Kuna, Idaho 83634
T: (425) 654-1142
E: kristian@beckettlegal.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

Anne S. Magnelli
Nicole M. Jenkins
John J. Maas
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426, Boise, ID  83707-7426
amagnelli@ajhlaw.com
njenkins@ajhlaw.com
jmaas@ajhlaw.com

☐ U.S. Mail, postage prepaid
☐ Overnight Mail
☐ Facsimile
☒ Email

By:   __/s/_____